**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JACK SOLOMON, an individual, ) | Case No.: 2:07-cv-645-RLH-PAL |
| Plaintiff, ) | **O R D E R** |
| vs. ) | (Motion to Dismiss–#59; |
| ROBERT MUELLER, III, in his official ) capacity, as DIRECTOR, FEDERAL BUREAU ) OF INVESTIGATIONS, J. Edgar Hoover ) Building, 935 Pennsylvania Avenue, NW, ) Washington, DC 20535; STEVEN ) SPIELBERG, an individual, ) | Motion to Dismiss–#65; Motion for Attorney Fees–#66) |
| Defendants. ) | |
| STEVEN SPIELBERG, an individual, ) | |
| Counterclaimant, ) | |
| vs. ) | |
| JACK SOLOMON, an individual, and JUDY ) GOFFMAN CUTLER, an individual, ) | |
| Counterdefendants. ) | |
| JUDY GOFFMAN CUTLER, an individual, ) | |
| Third-Party Plaintiff, ) | |
| vs. ) | |
| ART LOSS REGISTER, INC., ) | |
| Third-Party Defendant. ) | |

1

Before the Court is Plaintiff/Counterdefendant Jack Solomon's ("Solomon") **Motion to Dismiss Cross-Claimant Judy Goffman Cutler's Fourth Counterclaim Captioned "Intentional Tort"** (#59), filed November 9, 2007. The Court has also considered Counterdefendant/Third-Party Plaintiff Judy Goffman Cutler's ("Cutler") Opposition (#64), filed November 2, 2007, Solomon's Reply (#67), filed December 10, 2007, and Cutler's Ex Parte Request to Respond to the Declaration of Jack Solomon (#74), filed December 21, 2007.

Also before the Court is Third-Party Defendant The Art Loss Register, Inc.'s ("Art Loss Register") **Motion to Dismiss Third Party Complaint** (#65), filed December 5, 2007. The Court has also considered Cutler's Opposition (#68) and accompanying documents (##69–71, Errata 81), filed December 21, 2007, and Art Loss Register's Reply (#79), filed January 4, 2008.

Also before the Court is Defendant/Counterclaimant Steven Spielberg's ("Spielberg") **Motion for Attorneys' Fees and Costs** (#66), filed December 10, 2007. The Court has also considered Cutler's Opposition (#72) and accompanying document (#73, Errata 82), filed December 21, 2007, Solomon's Opposition (#78), filed January 4, 2008, and Spielberg's Reply (#83) and accompanying document (#84), filed January 14, 2008.

**BACKGROUND**

This case arises out of competing claims of ownership to a work of fine art created by the late Norman Rockwell entitled *The Russian Schoolroom* ("Rockwell Painting"). Solomon alleges that he is the rightful owner of the Rockwell Painting and that it was stolen from him in June 1973. Cutler alleges that she purchased the Rockwell Painting at an auction in 1988, and despite conducting a due diligence inquiry and widely publicizing her ownership of the piece, Solomon never took any effort to notify her or the world at large that the Rockwell Painting was stolen. In September 1989, Cutler sold the piece to Spielberg.

In February 2007, Spielberg learned that the Rockwell Painting was allegedly stolen in 1973. After contacting the FBI, he learned of Solomon's claim to ownership of the piece. On May 11, 2007, Cutler, to protect her client and her reputation as an art dealer, entered into an

agreement with Spielberg whereby he transferred any rights he had in the Rockwell Painting to Cutler in exchange for another Normal Rockwell painting.  Per the instructions of the FBI, Spielberg maintained possession of the painting.

On May 16, 2007, Solomon filed this suit against Spielberg and the Director of the FBI, but not against Cutler.  The day before, Cutler had filed an action against Solomon and the Art Loss Register in the United States District Court for the Southern District of New York.  On July 16, 2007, having relinquished all rights to the Rockwell Painting via his agreement with Cutler, Spielberg interplead Cutler.  Cutler voluntarily dismissed her New York case and instead filed counterclaims against Solomon and a third-party claim against the Art Loss Register in this case.  On October 15, 2007, the Parties agreed to deposit the Rockwell Painting at a mutually agreed upon location and to dismiss Spielberg from the action but could not agree on the payment of Spielberg's attorney fees.  On November 19, 2007, the Court dismissed Spielberg from the case and permitted him to bring a motion for attorney fees.

**DISCUSSION**

**I.    Motions to Dismiss**

Solomon seeks dismissal of Cutler's fourth counterclaim, and the Art Loss Register seeks dismissal of Cutler's sole third-party claim.  Both Solomon and the Art Loss Register interpret the claims as one for prima facie tort.  However, Cutler clarifies that her claim is not for prima facie tort, but for a separate cause of action styled "intentional tort." (*See* Cutler's Opp'n to Solomon's Mot. to Dismiss & Cutler's Opp'n to Art Loss Register's Mot. to Dismiss.)

**A.    Allegations**

Cutler alleges that the Art Loss Register, acting on its own and as Solomon's agent, made threats addressed to her that she would be criminally prosecuted and suffer adverse publicity if she did not settle Solomon's claim to his satisfaction. (Cutler's Answer and Countercls. to Compl. by Solomon ¶ 59.)  Cutler alleges that the Art Loss Register's conduct "was malicious, intentionally tortious and in the nature of extortion." (*Id.*)  Moreover, Cutler alleges that Solomon

3

told the press that she "should have known better," that "she could have checked," and that "there's been a record of this ever since the day it was stolen." (*Id.* ¶ 60.) She further alleges that these statements were "false and malicious, and made knowing that the theft had not been listed on any publicly available registry," and knowing that Cutler had obtained the Rockwell Painting in 1988. Cutler alleges that Solomon's statements were intended to force her to settle on terms that were satisfactory to him. (*Id.*) Finally, she alleges that Solomon's and the Art Loss Register's conduct caused her to suffer special damages in the form of legal fees and the loss of Spielberg as a client. (*Id.* ¶ 61.)

### B. Choice of Law

"When a federal court exercises supplemental jurisdiction, the federal court applies the choice-of-law rules of the forum state." *Douglas v. U.S. Dist. Court for Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007) (citations and quotations omitted). Nevada has recently adopted the Restatement (Second) Conflict of Law's most significant relationship test to determine choice of law in tort actions, unless a more specific section applies to a particular tort. *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111, 116 (Nev. 2006). There is no specific section on "intentional tort," so the general rule applies.

Here, New York law applies to Cutler's "intentional tort" claim because New York has the most significant relationship to the underlying factual allegations. Cutler's claims arises principally out of communications between Cutler's, Solomon's, and the Art Loss Register's New York attorneys in the state of New York. Moreover, while Solomon's allegedly defamatory statements about Cutler were made outside of New York, Cutler alleges that the damage she suffered occurred in New York because the statements were intended to force her into an unfavorable settlement there. Accordingly, the Court finds that New York law applies to Cutler's "intentional tort" claim.

//

//

4

### C. Intentional Tort

According to Cutler, "intentional tort" is a cause of action recognized by the New York courts, distinct from a cause of action for prima facie tort. There is some support for her position in New York case law. In *Chen v. United States*, the Second Circuit recognized that "intentional tort and prima facie tort share common elements," but they are separate causes of action. *See* 854 F.2d 622, 627 (2nd Cir. 1988). The common "elements are '(1) the intentional infliction of harm, (2) causing special damages, (3) without excuse or justification.'" *Id.* (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984)). The causes of action "differ only in that prima facie tort requires that the acts complained of would otherwise be lawful." *Id.* (internal quotations omitted).

The state court cases recognizing a cause of action separate from prima facie tort are less clear, but do recognize the distinction. In *Morrison v. National Broadcasting Company*, the court recognized a class of torts outside the ambit of prima facie tort:

> It is not important to the present analysis that so-called 'prima facie' tort was thus rationalized. It is important that the Court aligned itself with the . . . view that tort concepts of liability did not depend solely upon procedural categories, important as they were, and that intentional harm, without excuse or justification, was actionable, *simpliciter*. The extension of these principles is well beyond what has been since dubbed the 'prima facie' tort. Indeed, the subclassification of 'prima facie' tort has perhaps caused more trouble in understanding than what it was supposed to clarify. . . . What should be clear enough is that 'prima facie' tort does not embrace all intentional tort outside the classic categories of intentional torts.

266 N.Y.S.2d 406, 412 (N.Y. App. Div. 1965) (italics in original), *reversed on other grounds by* 227 N.E.2d 572 (N.Y. 1967); *see also Socialist Workers Party v. Attorney General of the United States*, 463 F. Supp. 515, 522 (S.D.N.Y. 1978) (recognizing *Morrison* as "a leading New York decision in this area"). The *Morrison* court made clear that the cause of action before it was not one for prima facie tort:

> In the first place, misplaced speculation about the applicability of 'prima facie tort' doctrine to this case should be eliminated. That open-ended, non-category, class or sub-class of tort covers 'disinterested malevolence,' that is, the intentional malicious injury to another by otherwise lawful means without economic or social justification, but solely to harm the other . . . The elements in this case are

distinguishable and stronger. The means used were not lawful or privileged, in the sense of affirmatively sanctioned conduct, but were intentional falsehood without benevolent purpose uttered to induce action by another to his detriment. The ultimate purpose and the scheme were corrupt, in the sense that no socially useful purpose but only gain by deceit was intended, although perhaps not 'illegal.'

*Id.* at 409.

The *Morrison* court relied heavily on *Penn-Ohio Steel Corp. v. Allis-Chalmers Mfg. Co.*, 184 N.Y.S.2d 58 (N.Y. App. Div. 1958). In *Penn-Ohio*, the appellate court explained:

Whether the cause of action pleaded should or should not be denominated as one for prima facie tort is of no moment, for the plaintiffs' right to maintain it does not hinge upon a label. . . . It seems inadvisable to lump all malicious and intentional harms into a grab bag labelled 'prima facie tort', especially since it is impossible to tabulate the infinite varieties of misconduct that give rise to actionable wrongs. It is generally accepted that [t]here is no necessity whatever that a tort must have a name. New and nameless torts are being recognized constantly. . . . What is important is that there must be the infliction of intentional harm, resulting in damage, without legal excuses or justification.

*Id.* at 60 (citations and internal quotations omitted). The *Penn-Ohio* court when on to say:

The utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow. . . . By its very nature a false statement intentionally made is wrongful. If it inflicts material harm upon another, which was or should have been in the contemplation of the actor, and it results in actual damage to the plaintiff's economic or legal relationships, an action may lie. . . . It logically follows that to sustain a complaint, it is not necessary that the pleading must allege that the defendant was solely motivated to injure the plaintiff. It is enough if the falsehoods charged were intentionally uttered and did in fact cause the plaintiff to suffer actual damage in his economic or legal relationships.

*Id.* at 61.

**D.     Motion to Dismiss Standard**

Fed. R. Civ. P. 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must examine the complaint to determine whether it contains sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). All factual allegations set forth in the complaint "are taken as true and construed in the

6

light most favorable to [p]laintiff[]." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). However, a court does not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### E.  Analysis

Here, the Court finds that Cutler has alleged facts sufficient to "raise a right to relief above the speculative level." It appears that "intentional tort" is an acceptable cause of action under New York law. Taken as true and construed in the light most favorable to her, Cutler's allegations are at least sufficient to state a claim under *Morrison* and *Penn-Ohio*. Cutler alleges that Solomon and the Art Loss Registry intentionally lied in order to "induce action by [Cutler] to [her] detriment." She alleges these statements caused her to suffer special damages in the form of legal fees, emotional distress, harm to reputation, and loss of Spielberg as a client. Regardless of how the tort is characterized, the Court finds that Cutler's allegations are sufficient to survive Solomon's and the Art Loss Register's Motions to Dismiss.

## II.  Motion for Attorney Fees

"Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action." *Abex Corp. v. Ski's Enter., Inc.*, 748 F.2d 513, 516 (9th Cir. 1984). "The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant." *Trs. of Dirs. Guild of Am.–Producer Pension Benefit Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). When granted, such awards are typically modest. *Id.* A court also has discretion to assess the fees against the property, against the losing claimants, or to divide the fees among the claimants. *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 195 (9th Cir. 1962.)

Here, the Court denies Spielberg's request for attorney fees and costs because there were legitimate reasons for Spielberg to remain in the litigation. Solomon filed this suit on May 16, 2007, seeking monetary damages and replevin of the Rockwell Painting, which was in

AO 72
(Rev. 8/82)

Spielberg's possession and remained in his possession for several months. Moreover, while Cutler and Spielberg agreed to extricate Spielberg from the suit, Solomon did not receive a copy of their deal until December 10, 2007, and thus had sufficient justification to keep Spielberg involved in the litigation. (Decl. of Amy Abdo ¶ 4.) In addition, the Court is unpersuaded by Spielberg's argument that Cutler refused to agree to his dismissal. Cutler and Spielberg entered into a deal to release Spielberg from the litigation, and the fact that they could not agree on the terms of his release until Spielberg had already expended significant attorney fees does not mean, in the Court's view, that Cutler should pay his legal expenses. As such, Spielberg's Motion for Attorney Fees is denied.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Solomon's Motion to Dismiss (#59) is DENIED.

IT IS FURTHER ORDERED that the Art Loss Register's Motion to Dismiss (#65) is DENIED.

IT IS FURTHER ORDERED that Spielberg's Motion for Attorney Fees (#66) is DENIED.

Dated: February 8, 2008.

_____
ROGER L. HUNT
Chief United States District Judge